UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-cv-62517-CV-GAYLES

LABOSS TRANSPORTATION
SERVICES, INC.,

       Plaintiff,

vs.

GLOBAL LIBERTY INSURANCE
COMPANY OF NEW YORK,

       Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant Global Liberty Insurance Company of New York's Motion for Summary Judgment [ECF No. 24]. The Court has reviewed the Motion, the parties' written submissions, the record, and the applicable law and has heard argument from the parties. For the reasons stated below, the Motion is denied.

**I.    FACTUAL BACKGROUND**

This is an action for declaratory decree seeking to establish the rights and obligations of the parties under a commercial automobile insurance policy, number FHP 0725551-0 ("Policy"), issued by Defendant Global Liberty Insurance Company of New York ("Global") to Plaintiff Laboss Transportation Services, Inc. ("Laboss"). The Policy was in effect from March 12, 2014, through March 12, 2015. Specifically, Laboss seeks liability insurance coverage for injuries and damage to passenger William Wilson, whose wheelchair flipped backwards within Laboss's van as the van departed from a red light on March 17, 2014. The parties agree that the issues present a pure legal question. [ECF No. 71 at 1]. The facts are generally undisputed.

Laboss is a Florida company engaged in the non-emergency transportation of clients to and from hospitals, clinics, and homes. On or before March 12, 2014, Laboss, through its insurance agent Lucy Singer, applied for a business automobile policy with Global. In the application, Laboss listed seven drivers, including Errol Ward, the driver of the van in which Wilson was injured. Along with the application, Laboss's insurance agent submitted driving records for the listed drivers. Global concluded that Ward was not an eligible driver under the proposed policy based on his driving record, including a suspension with at least one accident within three years. Global informed Singer that the policy would not be issued with Ward as a driver. That same day, Singer resubmitted Laboss's application, this time with Ward's name crossed out—meaning that Ward was no longer submitted as a listed driver for Laboss. Relying on the representations in the application, Global issued the Policy to Laboss effective that same day, March 12, 2014.

On March 13, 2014, Ward cleared his driver license suspension and had his driving privileges reinstated. He subsequently resumed driving patients for Laboss, although he had not yet been added as a listed driver to the Policy. Laboss asserts that it advised Singer on March 14, 2014, that Ward's license had been reinstated and requested that he be added to the Global policy three days prior to Wilson's accident. However, Singer did not formally request that Global add Ward to the policy until after Wilson's accident.

On March 17, 2014, Ward was driving Wilson, a Laboss client, in a van—a "covered auto" under the Policy—when Wilson's wheelchair flipped backwards as Ward accelerated the van from a stop at a red light at the intersection of I-95 and Sheridan Street in Hollywood, Florida. Prior to the accident, Ward had fastened Wilson's wheelchair into the van using the Q'Straint system for which he had previously received training. The following day, Singer

requested that Global include Ward on Laboss's policy, though she did not reveal the March 17 accident to Global. That same day, Global issued an endorsement accepting Ward as a driver on the Laboss policy.

Later that week and the following week, both Wilson's attorney and Laboss gave notice to Global of Wilson's accident. After investigating the claim, Global determined that there was no coverage under the Policy because "there was no automobile accident" and that the claimed loss was "not a covered event." [ECF No. 28-1 at 68]. Global never rescinded or canceled Laboss's Policy, nor did it return any portion of the premium paid for the Policy. In fact, Global renewed the Policy for the subsequent policy period beginning on March 12, 2015, knowing that Ward was one of Laboss's drivers. Prior to the filing of this action in November 2014, Wilson's attorney made a verbal demand on Laboss for compensation in the amount of the $500,000 Policy limit. [ECF No. 11-1 at ¶ 6].[1] The Policy was subsequently canceled in May 2015.

## II.     THE POLICY

The relevant provisions of the Policy provide as follows:

Coverage

SECTION II – LIABILITY COVERAGE

A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

[. . .]

1. Who Is An Insured

The following are "insureds":

a. You for any covered "auto".

---

[1] On July 15, 2015, Wilson's attorney subsequently submitted a demand letter to Global, again seeking compensation in the amount of the Policy limit. [ECF No. 52-2].

b. Anyone else while using <u>with your permission</u> a covered "auto" [. . .]

[ECF No. 29-1 at 32] (emphasis added).

Definitions

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".[2]

[*Id.* at 40].

Exclusions

B. Exclusions

This insurance does not apply to any of the following:

1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

[*Id.* at 33].

This insurance does not apply to:

1. "Bodily injury" resulting from the providing or the failure to provide any medical or other professional services.[3]

[*Id.* at 48].

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[T]he plain language of Rule 56[a] mandates the entry of summary judgment, after adequate time for discovery and upon motion,

---

[2] The Policy otherwise does not define "accident."
[3] The Policy does not define "professional services."

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

A "genuine" issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

**IV.    ANALYSIS**

In its Motion, Global argues that it is entitled to summary judgment on the following bases: a) Laboss misrepresented a material fact in its application for coverage under the Policy; b) the March 17, 2014 incident was not an "accident" arising out of the use or operation of a motor vehicle covered under the Policy; c) even if the incident can be considered an "accident," the failure to properly restrain Wilson's wheelchair should be considered "professional services" excluded under the policy; and finally d) there is no lawsuit or "claim" against Global, so this declaratory relief is premature and inappropriate. The Court finds each of these arguments unconvincing.

5

### A. Ward's Coverage Under the Policy

Laboss argues that Ward was a permissive driver under the Policy at the time of the March 17 accident and, therefore, it is immaterial that Ward was not a listed driver at that time. The Court looks to the Policy for that determination. "Under Florida law, insurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (citation and internal quotation marks omitted). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "Ambiguities in insurance contracts are interpreted against the insurer and in favor of the insured." *Id.* (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). "A provision is not ambiguous simply because it is complex or requires analysis." *Id.* (citing *Swire Pac. Holdings*, 845 So. 2d at 165).

The Policy here clearly and unambiguously defines its "insured" as (1) Laboss for any covered auto, and (2) anyone else using a covered auto with Laboss's permission. *See* [ECF No. 29-1 at 32]. In fact, Global concedes that the Policy covers permissive drivers. *See* [ECF No. 41 at 43–44]. Based on the Policy's broad definition, Ward qualified as an insured under the Policy at the time of the accident as he drove the van with Laboss's permission after his license was reinstated.

Despite the Policy's clear language, Global maintains that Ward was not an insured driver under the Policy because he was not listed and approved by Global. However, no such

6

requirement exists. The Policy does not limit coverage to listed and approved drivers. Rather, the Policy covers drivers who fall within its broad definition of "insured." Even if the Court found that an ambiguity existed regarding coverage, the Court would construe that ambiguity against Global and find coverage for Laboss and Ward under the Policy.

The Court recognizes that Global has a legitimate interest in knowing who will be driving insured automobiles. However, Global's desire to approve drivers as a condition of coverage must be made a part of the Policy.

### B. Wilson's Accident Under the Policy

As previously noted, Wilson fell as his wheelchair flipped backwards in Laboss's van when Ward accelerated from a stop at a red light. Global argues that this did not constitute an "accident" under the Policy. Global emphasizes that Ward himself stated that there was "no accident." [ECF No. 24 at 13–14]. However, Ward's statements and understanding of the term "accident" do not control this Court's application of the facts to the Policy.

The Policy broadly defines "accident" to "include[] continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" [ECF No. 29-1 at 40]. But, the Policy does not affirmatively state what constitutes or does not constitute an accident. The Florida Supreme Court has "conclude[d] that the term 'accident' within a liability policy is susceptible to varying interpretations and should be construed in favor of the insured." *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1076 (Fla. 1998). "[T]he term 'accident' . . . encompasses not only 'accidental events,' but also injuries or damage neither expected nor intended from the standpoint of the insured." *Id.* In *Heritage Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, the court considered whether an insurer was liable for bodily injury "caused by accident resulting from the ownership, maintenance or use of"

7

an insured vehicle. 657 So. 2d 925, 927 (Fla. 1st DCA 1995). In that case, children in a van were not wearing their seatbelts and were throwing ice and climbing over seats. *Id.* at 926. One child was injured when another child hit him in the head. *Id.* First, the court noted that "[i]t is not sufficient that the vehicle was merely the situs of the injuries." *Id.* at 927 (citations omitted). "However, it is not necessary that the injuries have been proximately caused by 'ownership, maintenance or use of' the insured vehicle. Rather, coverage will be found to exist if the injuries 'flow from,' 'originate from' or 'grow out of' 'ownership, maintenance or use of' the insured vehicle." *Id.* (citations omitted). In that case, the court found coverage under the policy for the child's injuries.

As "accident" is not clearly defined by the instant Policy, the term is ambiguous. Therefore, the Court must construe that ambiguity against the insurer and in favor of coverage. *Taurus Holdings*, 913 So. 2d at 532. The Court concludes that Wilson's fall in the wheelchair did "flow from, originate from or grow out of" Laboss's use of the covered auto under the Policy. *See Heritage Mut.*, 657 So. 2d at 927. The movement of a passenger's wheelchair during the acceleration of a vehicle designed to transport medical patients is even more causally connected to use of the vehicle than the horseplay injuries of a child passenger, where a Florida court found coverage. *See id.* Therefore, the Court finds that Wilson's accident on March 17, 2014, falls within the term "accident" in the Policy.

### C. Professional Services Exclusion

Global argues that Ward's failure to properly use the Q'Straint System to secure Wilson's wheelchair in the van is excluded from coverage under the Policy's professional services exclusion. Laboss responds that Ward's services cannot be considered professional services.

Because the Policy does not define "professional services," this Court will apply the

dictionary definition of "professional," which is "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." *See Aerothrust Corp. v. Granada Ins. Co.*, 904 So. 2d 470, 472 (Fla. 3d DCA 2005) (quoting *Black's Law Dictionary* 1246 (8th ed. 2004); *Auto-Owners Ins. Co. v. E.N.D. Servs., Inc.*, 506 Fed. App'x 920, 924 (11th Cir. 2013). While "the exclusion has been applied to attorneys, psychiatrists, and medical technicians," *Evanston Ins. Co. v. Budget Grp. Inc.*, 199 F. App'x 867, 868 (11th Cir. 2006), "[f]or the [professional services] exclusion to apply, the activity need not be one for which traditional professional training, e.g. doctor, lawyer or engineer, is required," *Nat'l Ben Franklin Ins. Co. of Ill. v. Calumet Testing Servs., Inc.*, 60 F. Supp. 2d 837, 845 (N.D. Ind. 1998), *aff'd*, 191 F.3d 456 (7th Cir. 1999). [4]

"Whether an act results from the nature of a professional service is determined by focusing upon the particular act itself, as opposed to the character of the individual engaging in the act." *Lindheimer v. St. Paul Fire & Marine Ins. Co.*, 643 So. 2d 636, 638 (Fla. 3d DCA 1994). "A professional act or service is one arising out of a vocation, calling, occupation or employment involving *specialized knowledge*, labor or skill, and the labor or skill involved is *predominantly mental or intellectual*, rather than physical or manual." *Gulf Ins. Co. v. Gold Cross Ambulance Serv. Co.*, 327 F. Supp. 149, 152 (W.D. Okla. 1971) (emphasis added). "Ambulance service is primarily manual. It is generally regarded as such. While it may require

---

[4] Professional services have been found to include certain integral tasks performed by medical technicians, *Alpha Therapeutic Corp. v. St. Paul Fire & Marine Ins. Co.*, 890 F.2d 368, 371 (11th Cir. 1989), ear-piercing, *Hollingsworth v. Commercial Union Ins. Co.*, 256 Cal. Rptr. 357, 362 (Cal. Ct. App. 1989), "securing and transporting an individual on a rolling stretcher" by an ambulance driver and a licensed EMT, *W. World Ins. Co. v. Empire Fire & Marine Ins. Co.*, No. C.A.7:06 217 RBH, 2006 WL 3337427, at *6 (D.S.C. Nov. 16, 2006), moving a patient from the floor to the cardiac table by a doctor, *St. Paul Fire & Marine Ins. Co. v. Med. Protective Co. of Fort Wayne, Ind.*, No. 2:04CV0391-FTM, 2006 WL 3544817, at *7 (M.D. Fla. Dec. 8, 2006), *aff'd sub nom. St. Paul Fire & Marine Ins. Co. v. Med. Protective Co. of Fort Wayne, Ind.*, 257 F. App'x 232 (11th Cir. 2007), and "the act of positioning a patient's foot to take an x-ray," *State Farm Fla. Ins. Co. v. Campbell*, 998 So. 2d 1151, 1152 (Fla. 5th DCA 2008). Real estate brokers are also considered as working in a "professional service" because of their training, licensing, continuing education, and legislature classification. *See S.-Owners Ins. Co. v. Herrera*, 116 F. Supp. 3d 1310, 1315 (M.D. Fla. 2015).

skill on the part of those who render the service, it does not require knowledge of an advanced type in a field of learning customarily acquired after a *long period of specialized intellectual instruction.*" *Id.* at 154–55 (emphasis added).

Here, Global argues that Ward's training in how to fasten and secure wheelchairs in the company's vans renders his work "professional services" under the Policy's exclusion. Specifically, Ward received training in the operation of the Q'Straint system for securing wheelchairs in Laboss's vans as well as the wheelchair lift. Global further argues that Laboss's compliance with the Broward County licensing requirements for nonemergency medical transportation services renders Ward's work "professional services." The requirements include such things as possessing a valid Broward County taxi and limousine driver identification card, being trained in the correct use of special wheelchair transport equipment, and receiving training in first aid and CPR. *See* [ECF No. 24 at 17–18].

The Court has reviewed the Q'Straint Instruction Guide [ECF No. 24-1] and is unconvinced that Ward's transportation of disabled passengers falls under the "professional services" exclusion of the Policy. The Court must look specifically at the act of securing Wilson's wheelchair. *See Lindheimer*, 643 So. 2d at 638. While the process is more complicated than simply fastening a vehicle's seatbelt, the Court cannot reasonably conclude that the act "requires a high level of training and proficiency." *See Aerothrust Corp.*, 904 So. 2d at 472. Nor is the nonemergency transportation of passengers remotely akin to the "professional services" described in the cases above, *supra* note 4, which generally involve medical technicians, doctors, and EMTs.

The record does not reflect that Ward's use of the Q'Straint system involved "predominantly mental or intellectual" skills, nor did he engage in a "long period of specialized

intellectual instruction." *See Gulf Ins. Co.*, 327 F. Supp. at 152. Rather, Ward's services fell within the coverage contemplated by the Policy. Global was fully aware that Laboss's business was for non-emergency transportation of patients to the Veterans Hospital, as such information was provided in the "Business Description" of the insurance application. [ECF No. 26-2 at 5, 15]. Sandra Reitan, Global's Assistant Vice President of Underwriting, admitted that Global knew that Laboss would be transporting people in wheelchairs. [ECF No. 41 at 31]. The proper fastening of those passengers in the vehicle, in compliance with state and local laws, does not elevate those services to the level of "professional services" under the Policy's exclusion. The Policy was extended with full knowledge that Laboss would be transporting passengers in wheelchairs that needed to be properly fastened. Excluding Ward's services would belie the very core of the Policy to cover the transportation of clients—many of whom utilize wheelchairs—to and from hospitals, clinics, and homes. Therefore, the Court finds that Ward's services on March 17, 2014, cannot be understood to be "professional services" under the Policy.

### D. **Material Misrepresentation**

Global argues that there is no coverage for Wilson's accident because Laboss made a material misrepresentation in its insurance application by removing Ward from its list of drivers while still allowing Ward to drive. Global notes that Laboss did not disclose the March 17 accident to Global until after adding Ward to the policy on March 18. Laboss argues that Ward's omission as a listed driver is immaterial because he still qualified as a permissive driver under the Policy at the time of the accident because he had a valid driver's license and was operating an automobile covered by the Policy. Laboss further argues that Global waived any reliance on the alleged misrepresentation because Global did not charge an additional premium and subsequently renewed Laboss's Policy in 2015 even after receiving notice of the accident. *See*

[ECF No. 41 at 32, 55].

Florida law provides that a "misrepresentation, omission, concealment of fact, or incorrect statement" in an insurance application may prevent recovery under the policy only if any of the following apply:

(a) The misrepresentation, omission, concealment, or statement is fraudulent or is material to the acceptance of the risk or to the hazard assumed by the insurer.

(b) If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

Fla. Stat. § 627.409(1). "Even unintentional misrepresentations or omissions in an application for insurance will prevent a recovery on a policy if the insurer proves that the misrepresentations or omissions are material to the risk taken or that the insurer would have altered the policy or would not have issued the policy had the true facts been revealed." *Jackson Nat'l Life Ins. Co. v. Proper*, 760 F. Supp. 901, 905 (M.D. Fla. 1991) (citing *Cont'l Assurance Co. v. Carroll*, 485 So. 2d 406, 409 (Fla. 1986). "A misrepresentation may also prevent recovery if the true facts had been known to the insurer, the insurer would not have issued the policy, would not have issued it at the same premium rate, or in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss." *Fresh Supermarket Foods, Inc. v. Allstate Ins. Co.*, 829 So. 2d 1000, 1001 (Fla. 2d DCA 2002) (citing *Kieser v. Old Line Life Ins. Co. of Am.*, 712 So. 2d 1261 (Fla. 1st DCA 1998)). "Uncontradicted deposition testimony or affidavit of an underwriter that he or she would not have offered the subject policy if the true facts had been known may satisfy the requirements" of the statute. *Carter v. United of Omaha Life Ins.*, 685 So. 2d 2, 6 (Fla. 1st DCA 1996).

However, an insurer can forfeit its right of rescission. *Echo v. MGA Ins. Co., Inc.*, 157 So. 3d 507, 511 (Fla. 1st DCA 2015); *see United Servs. Auto. Ass'n v. Clarke*, 757 So. 2d 554, 556 (Fla. 4th DCA 2000). "The elements of waiver are: (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge of the right; and (3) the intention to relinquish the right." *Leonardo v. State Farm Fire & Cas. Co.*, 675 So. 2d 176, 178 (Fla. 4th DCA 1996). "[I]t is equally well settled in insurance law that, when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof." *Johnson v. Life Ins. Co. of Ga.*, 52 So. 2d 813, 815 (Fla. 1951); *see Wimberg v. Chandler*, 986 F. Supp. 1447, 1455 (M.D. Fla. 1997) (finding waiver of Fla. Stat. § 627.409 where the insurer had the right to rescind the policy due to the insured's material misrepresentation in his application, knew or should have known of the misrepresentation, and "waived its right to rescind the policy by renewing the policy and by accepting and retaining premiums after its agent knew" of the material misrepresentation). "While, ordinarily, the insurer is not deemed to have waived its rights unless it is shown that it has acted with the full knowledge of the facts, the intention to waive such rights may be inferred from a deliberate disregard of information sufficient to excite attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared." *Johnson*, 52 So. 2d at 815. "The acceptance and collection of the premiums with constructive notice of the facts here relied on as a defense is certainly an unequivocal act which recognizes the continued existence of the policy and which is wholly inconsistent with a forfeiture." *Id.* (citation and internal quotation marks omitted).

"Where the evidence is clear and uncontradicted[,] the materiality of the

misrepresentation shall be decided as a question of law." *de Guerrero v. John Hancock Mut. Life Ins. Co.*, 522 So. 2d 1032, 1033 (Fla. 3d DCA 1988). "Materiality of a fact, in insurance law, is somewhat subjective and relates to what the fact reasonably and naturally means to the insurer as a practical matter of probability at the time of acceptance of the risk." *Minn. Mut. Life Ins. Co. v. Candelore*, 416 So. 2d 1149, 1151 n.2 (Fla. 5th DCA 1982).

The Court finds that Laboss's failure to timely identify Ward's status as its driver was not material. As the Court has already concluded, the Policy does not limit coverage to listed drivers or drivers approved by Global. As Ward was a lawful and permissive driver under the Policy at the time of the accident, the alleged misrepresentations and/or omissions by Laboss and Singer were not material—though unfortunate and unnecessary—because Ward was then a covered driver.

Further, the Court finds that Global waived its rescission claim under § 627.409 through its subsequent actions. Even after having knowledge of the accident and Ward's status as a Laboss driver, Global did not remove Ward from the Policy. Nor did Global assess Laboss an additional premium to keep Ward on the Policy. *See* [ECF No. 41 at 32, 55]. Armed with the relevant information, Global even renewed the Policy in 2015 with Ward as a listed driver. [*Id.* at 32]. Therefore, it is reasonable to conclude that Global itself did not find Laboss's purported misrepresentations and omissions to be material. Accordingly, the Court finds that Global waived its claim for rescission.

### E.  Claim against Global

Finally, Global argues that this suit is inappropriate because there does not exist any underlying suit that Global must defend, nor is there a demand or claim that an accident occurred. [ECF No. 24 at 19–20]. The Declaratory Judgment Act grants the federal district courts

the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "An essential element for a declaratory judgment action is the existence of an 'actual controversy' between the parties, a term which holds the same meaning as the cases and controversies requirement of Article III to the United States Constitution." *Sprint Sols., Inc. v. 4 U Cell, LLC*, No. 2:15-CV-605-FTM-38CM, 2016 WL 1244528, at *2 (M.D. Fla. Mar. 30, 2016). "A case or controversy must exist at the time the declaratory judgment action is filed." *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1568 (11th Cir. 1995). "The test for an 'actual controversy' under the Declaratory Judgment Act does not require a present dispute, but only the 'practical likelihood' that a dispute will arise." *Tudor Ins. Co. v. Zelwin, LLC*, No. 8:16-CV-376-T-30JSS, 2016 WL 1383040, at *1 (M.D. Fla. Apr. 7, 2016). "[A]n 'actual controversy' exists where 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, — F. Supp. 3d —, 2015 WL 9269413, at *5 (M.D. Fla. December 21, 2015) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Nat'l Gen. Ins. Online, Inc. v. Black*, 5:15-CV-111-OC-30PRL, 2015 WL 7777533, at *2 (M.D. Fla. 2015) ("A potential claim need not mature to the level of a lawsuit to qualify as a 'substantial controversy' of 'sufficient immediacy.'").

While it is true that Wilson has not yet filed a civil action against Laboss, the record is clear that Wilson's attorney and Laboss made claims upon Global soon after the accident and that Global denied the claim. Given that Laboss officially denied coverage, it is unclear how the Court can now find that there was never a dispute between the parties. Prior to the filing of this suit, Wilson's attorney also advised Laboss's attorney that Wilson was seeking compensation in

the amount of the $500,000 Policy limit. [ECF No. 11-1 at ¶ 6]. Wilson's attorney submitted a letter to Global on July 15, 2015, in which Wilson again requested coverage under the Policy. [ECF No. 52-2]. As it is clear that a controversy existed between the parties before the filing of this suit, the Court is satisfied that Laboss's claims against Global are not premature under the Declaratory Judgment Act.

**V.     CONCLUSION**

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [**ECF No. 24**] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 26th day of May, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:     Magistrate Judge Turnoff
        All Counsel of Record